**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MEUNIER CARLIN      :
CURFMAN, LLC,          :
                         :
     Plaintiff,            :
                         :    CIVIL ACTION NO.
     v.                  :    1:15-CV-1665-RWS
                         :
SCIDERA, INC.,         :
                         :
     Defendant.       :
                         :
                         :

## <u>ORDER</u>

At its core, this case presents the following question: when a client

retains an attorney but later becomes dissatisfied with the quality or cost of the

attorney's work, is the client, nevertheless, obligated to pay the attorney's fees

and costs?

In this case, Plaintiff Meunier Carlin & Curfman, LLC ("Meunier"), a

law firm, seeks to recover unpaid costs and fees, as well as other damages

associated with the legal services it provided to a former client, Defendant

Scidera, Inc. ("Scidera"). The case comes before the Court, now, on Meunier's

Motion for Summary Judgment [65] and Scidera's Motion for Partial Summary

Judgment [66]. After reviewing the record, the Court enters the following Order.

## Background

Some time in the fall of 2011, Scidera retained Meunier to manage its patent portfolios and the patent portfolios of its related entities. (Pl.'s Statement of Undisputed Material Facts ("Pl.'s SOF"), Dkt. [65-2] ¶ 4.) To memorialize their relationship, Meunier sent an engagement letter to Scidera, and the two exchanged drafts. (Id. ¶ 5.) Under the terms of the engagement letter, Meunier would bill Scidera for work performed at specified hourly rates. (Ex. E, Pl.'s SOF ("Engagement Letter"), Dkt. [65-8] at 5.) Scidera would also reimburse Meunier for costs associated with the representation. (Id.) Meunier would not, however, bill for travel time unless the attorney was actively working on something else for Scidera. (Id.)

Scidera remained Meunier's client until at least 2015, and during that time Meunier represented Scidera and its related entities in various intellectual property matters. (Pl.'s SOF, Dkt. [65-2] ¶¶ 9, 11.) This included two federal lawsuits. (Id. ¶ 10.) Those suits arose from accusations of patent infringement by a competing company called Mars. (Id. ¶ 12.) The Parties learned of

AO 72A
(Rev.8/82)

Mars's allegations in the fall of 2011, and on October 13, 2011, Meunier sent

Scidera a memorandum laying out a litigation strategy and estimating its cost to

be between $1,182,00 and $2,042,00.17. (Id. ¶¶ 12, 14; Ex. G, Pl.'s SOF

("2011 Memo"), Dkt. [65-10].)

Mars filed the first lawsuit in the Eastern District of Virginia, then

Meunier filed the second in California. (Pl.'s SOF, Dkt. [65-2] ¶¶ 15–16.)

Meunier performed work for Scidera in both matters, taking direction from

several Scidera executives, including its CEO, Chris Paxos, CFO, Myron

Cybyk, and Scidera's intellectual property manager, Dan Smith. (Id. ¶¶

16–23.) Eventually–and despite Scidera's opposition–the California case was

transferred to Virginia. (Id. ¶ 17.)

During discovery in the Virginia case, the judge ordered Scidera to

produce a sizeable number of documents within a short period of time. (Id.

¶ 25.) Complying with that order called for additional help, so Meunier began

looking for a litigation services company. (Id. ¶ 26; Dep. of Myron Cybyk

("Scidera Dep."), Dkt. [33] at 57–58.)[1] Scidera told Meunier that its budget

---

[1] Because Mr. Cybyk's deposition was taken pursuant to Federal Rule of Civil Procedure 30(b)(6), the Court attributes his statements to Scidera.

AO 72A
(Rev.8/82)

was $20,000, (Def.'s Statement of Additional Material Facts that Present a

Genuine Issue for Trial ("Def.'s Suppl. SOF"), Dkt. [75-5] ¶ 4; Scidera Dep.,

Dkt. [33] at 59–62, 64), but Meunier was unable to find a vendor willing to do

the work for that price, (Ex. I, Pl.'s SOF, Dkt. [65-12]). Meunier, therefore,

retained the most affordable option, Document Technologies, LLC ("DTI").

(Id.; Pl.'s SOF, Dkt. [65-1] ¶ 26.)[2] DTI performed the work and sent its bill to

Meunier. Scidera, however, refused to pay for DTI's services. (Pl.'s SOF, Dkt.

[65-1] ¶ 29; Def.'s Suppl. SOF, Dkt. [75-5] ¶¶ 3–6.)

  While the Virginia case was ongoing, Meunier sent invoices to Scidera

for the work performed and expenses paid. (Pl.'s SOF, Dkt. [65-1] ¶ 30.) On

April 24, 2012, after receiving the invoices, Scidera raised concerns over the

growing cost of the litigation and the efficiency with which Meunier was

---

  [2] It is undisputed that Meunier, not Scidera, executed the agreement with DTI
entitled "Statement of Work," and that Meunier, not Scidera is listed as the client in
that agreement. (Ex. B, Decl. of Myron B. Cbyk, Dkt. [75-4].) Interestingly however,
in support of its Reply, Meunier has produced a signed copy of the agreement in
which Meunier's name is crossed out and replaced with Scidera's. (Decl. of Adam S.
Rubenfield, Dkt. [77-2] at 4.) The Court recognizes that this document is likely
inadmissible given that the accompanying affidavit is insufficient to lay a proper
foundation under the business record exception to the hearsay rule. See Fed. R. Evid.
803(6). But either way, this issue is immaterial because the salient question is not
necessarily what Meunier wrote on the agreement, but rather what Scidera authorized
Meunier to do in the first place. See infra Part II.B.4.

4

AO 72A
(Rev.8/82)

handling it.  (Id. ¶ 34; Def.'s Suppl. SOF, Dkt. [75-5] ¶ 17.)  Just over a week

later, Meunier responded with a lengthy email explaining the various

complexities that had arisen in the case, which Meunier had not anticipated in

its initial estimate.  (Pl.'s SOF, Dkt. [65-1] ¶ 36.)

    In 2012, the Virginia case settled when Mars agreed to purchase the

portfolio at issue from Scidera.  (Scidera Dep., Dkt. [33] at 54–56; Aff. of

Stephen M. Schaetzel ("Schaetzel Aff."), Dkt. [65-4] ¶ 14.)  After that, Scidera

paid some of Meunier's invoices, but by October 2013, many were still

outstanding.  (Pl.'s SOF, Dkt. [65-1] ¶ 41.)  So Meunier sent Scidera a formal

demand letter; Scidera, however, did not respond.  ( Id. ¶¶ 41–42.)  Yet,

Scidera remained Meunier's client and continued to make payments until 2015,

when the Parties' relationship ended.  (Def.'s Statement of Undisputed Material

Facts ("Def.'s SOF"), Dkt. [66-2] ¶ 18.)  To date, the outstanding fees amount

to $876,871.07.[3]  (Pl.'s SOF, Dkt. [65-1] ¶ 41.)  Meunier filed this action to

recover those fees on a breach of contract and open account theory.

─────────────────

    [3] In the Amended Complaint [27], Meunier states that the amount owed is
$882, 502.61.  The outstanding principal is actually less, however, "because Meunier
applied Scidera's retainer and trust funds to some of the outstanding receivables
during the lawsuit."  (Pl.'s SOF, Dkt. [65-1] ¶ 44.)

AO 72A
(Rev.8/82)

Additionally, DTI brought lawsuit against Meunier to collect on its unpaid invoices, which Scidera settled for $95,000.00. (Id. ¶ 46.) Meunier seeks to recover that amount from Scidera as well, along with the costs Meunier incurred defending that lawsuit, under a theory of contribution and indemnity.

Meunier has filed a Motion for Summary Judgment on each of the claims asserted in the Amended Complaint, with the exception of its claim for unjust enrichment and quantum meruit (Count III), which was pled in the alternative. Scidera, too, moves for summary judgment on Meunier's claim for attorney's fees and costs.

## Discussion

## I.    Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-

50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the

moving party has met its burden under Rule 56(a), the nonmoving party "must

do more than simply show there is some metaphysical doubt as to the material

facts").

## II.    Analysis

### A.    Admissibility of Contested Evidence

Before reaching the merits of the pending motions, the Court must first

determine which evidence may be considered in its analysis.  That is because

Scidera challenges the admissibility of several documents relied on by Meunier

in support of its Motion for Summary Judgment.  Specifically, Scidera argues

that the invoices and accounting records reflecting Meunier's costs and fees are

inadmissible hearsay, as are several emails exchanged between the parties;

thus, Scidera argues, the Court should discount them in ruling on Meunier's

Motion.

8

"The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999).  There is an exception, however, if the statement can be "reduced to admissible evidence at trial" or "reduced to admissible form." Id.  Hearsay might be reduced to an admissible form if, for example, "it falls within an exception to the hearsay rule, or does not constitute hearsay at all . . . , or is used solely for impeachment purposes (and not as substantive evidence)." Id. at 1323–24.

### 1.    Invoices and Accounting Records

The Court finds the invoices and accounting records are "reducible to admissible form" because they fall within an exception to the hearsay rule, specifically Rule 803(6), the business records exception.  See Macuba, 193 F.3d at 1323–24.  Those records are supported by Schaeztel's affidavit.  As a principal of the firm, Schaeztel is a "custodian or []other qualified witness," competent to lay the foundation for the business records.  Fed. R. Evid. 803(6); Rosenberg v. Collins, 624 F.2d 659, 665 (5th Cir.1980)[4] ("Any person in a

---

[4]  In Bonner v. City of Prichard, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.  661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

AO 72A
(Rev.8/82)

position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records."). And although Schaeztel's affidavit does not elaborate on his own experience representing Scidera or how specifically the financial records were maintained, "[t]he absence or extent of personal knowledge regarding preparation of a business record affects the weight rather than the admissibility of the evidence." Chadwick v. Bank of Am., N.A., 616 F. App'x 944, 948 (11th Cir. 2015) (quoting United States v. Page, 544 F.2d 982, 987 (8th Cir.1976)). Schaeztel's affidavit is, therefore, sufficient to lay foundation for the records, so the Court may consider them on summary judgment.[5]

### 2. Emails

The Court likewise finds that the emails produced by Meunier are properly considered at this stage of the litigation. Scidera takes particular issue with an email sent from Schaetzel about the cost of retaining DTI. While it is

---

[5] Specifically to the invoices, the Court further notes that even if Schaeztel was not a competent witness under Rule 803(6), there is no indication in the record that the attorneys and staff who billed Scidera for their time would be unable to testify at trial. See Offshore Aviation v. Transcon Lines, Inc., 831 F.2d 1013, 1015–16 (11th Cir. 1987) (exclusion of letter at summary judgment improper because it was based on the writer's personal knowledge and indicated that there was no impediment to the writer testifying at trial as to the facts described in the letter).

AO 72A
(Rev.8/82)

true that this email, in its current form, would be inadmissible hearsay, it could easily be "reduced to admissible evidence at trial or reduced to an admissible form," say, by "hav[ing] the hearsay declarant testify directly to the matter at trial." Jones v. UPS Ground Freight, 683 F.3d 1283, 1293 (11th Cir. 2012). The Court sees no reason why Schaetzel would be unable to testify directly about his discussions with DTI and the price estimate that he relayed to Scidera. In fact, Schaetzel has already submitted a sworn statement in this case. Consequently, the Court may consider the email in ruling on Meunier's Motion for Summary Judgment.

B.     Motions for Summary Judgment

Meunier moves for summary judgment on four of its claims: (1) breach of contract; (2) open account; (3) indemnity; and (4) attorney's fees and costs. Scidera filed a separate motion, seeking summary judgment on Meunier's claim for attorney's fees and costs. The Court will discuss each of the four claims at issue, in turn, to assess whether summary judgment is appropriate for either party.

1.     *Breach of Contract*

Under Georgia law, the elements of breach of contract are: "(1)

breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga Ct. App. 2010). Of course, this also requires, as a threshold matter, the existence of a valid contract. And here, Scidera contests the existence of such an agreement.

"To constitute a valid [written or oral] contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. Scidera does not dispute that the ability to contract, consideration, and subject matter requirements are satisfied. Scidera, instead, focuses on mutual assent, arguing that there was no "meeting of the minds" between the parties.

A contract is complete and enforceable when "there is a meeting of the minds as to all essential terms." Georgia Dep't of Cmty. Health v. Data Inquiry, LLC, 722 S.E.2d 403, 406 (Ga. Ct. App. 2012) (internal quotations and citation omitted). Meunier, in support of its Motion for Summary Judgment, argues that the parties entered into an agreement for Meunier to perform legal services on behalf of Scidera and relies on the draft engagement

12

letter sent to Scidera in 2011 for this position. According to Meunier, that letter lays out the material terms of the Parties' agreement: that Meunier would bill Scidera for the work it performed at hourly rates, which Scidera would pay along with additional expenses. The Court agrees.

The undisputed evidence shows that Meunier entered into a valid and enforceable contract with Scidera. In the engagement letter, Meunier agreed to provide legal services in exchange for payment at specified, hourly rates. (Engagement Letter, Dkt. [65-8] at 5.) Scidera paid Meunier a retainer and paid its legal fees for years. (Def.'s Resp. to Pl.'s SOF, Dkt. [76] ¶¶ 7, 9, 32.) When Meunier assumed representation of Scidera in the California and Virginia cases, Meunier sent Scidera a memo estimating the costs of litigating those cases–a practice consistent with and required by the terms of the engagement letter.[6] (2011 Memo, Dkt. [65-10]; Engagement Letter, Dkt. [65-8] at 4.) It is also undisputed that Scidera paid for some of Meunier's services in the California and Virginia cases and that Scidera directed many of the

---

[6] Indeed, this estimate further evidences the existence of a valid agreement between the Parties. The 2011 engagement letter requires that Meunier provide a written estimate to Scidera for any matter "likely to exceed $5,000 in total billings . . . ." (Engagement Letter, Dkt. [65-8] at 4.) For the litigation matters, Meunier did just that. (See 2011 Memo, Dkt. [65-10].)

13

actions Meunier took.  (Def.'s Resp. to Pl.'s SOF, Dkt. [76] ¶¶ 10, 16–23, 32.)

By 2012, both of the cases were resolved.  (Id. ¶ 38.)  And Scidera remained

Meunier's client until at least 2015.  (Id. ¶ 11.)  Mutual assent is, therefore,

apparent from the face of the engagement letter and Scidera's payment of fees

under its terms, along with Scidera's active role in the California and Virginia

cases and continued relationship with Meunier thereafter.  See Turner Broad.

Sys., Inc. v. McDavid, 693 S.E.2d 873, 878 (Ga. Ct. App. 2010) (determining

whether there was mutual assent by applying "an objective theory of intent

whereby one party's intention is deemed to be that meaning a reasonable

[person] . . . would ascribe to the [] party's manifestations of assent").[7]

Nevertheless, Scidera insists that the engagement letter itself, as well as

the Parties' attenuating actions create questions of material fact as to whether

the Parties ever agreed to such terms.  But in doing so, Scidera inappropriately

---

[7] Although Scidera never signed the engagement letter, "[u]nder Georgia law, a party's conduct may bind him to the terms of a contract, even if he does not sign the agreement."  Hemispherx Biopharma, Inc. v. Mid-S. Capital, Inc., 690 F.3d 1216, 1225 (11th Cir. 2012) (citing Comvest, L.L.C. v. Corporate Secs. Grp. Inc., 507 S.E.2d 21, 24–25 (Ga. Ct. App. 1998).  As Meunier correctly points out, in this case, Scidera evidenced assent to the letter's terms through its behavior–in particular, having Meunier perform a range of legal services and paying some of the bills for that work.

14

relies on subjective, after-the-fact assessments of the Parties dealings and

Meunier's handling of the litigation matters. For example, Scidera argues that

although it expected to pay for Meunier's services, it did not specifically agree

to give Meunier the unfettered ability to rack up legal fees that Scidera was

required to pay "no matter how inadequately, ineffectively, and inefficiently

[Meunier] performed." (Def.'s Resp. to Pl.'s MSJ ("Def.'s Resp."), Dkt. [75] at

6.) Scidera goes on to say that Scidera "performed work that was never

budgeted or authorized, and which in any event was not performed adequately

effectively, and efficiently." (Id. at 7.) Thus, Scidera concludes, the Parties

must not have reached a "meeting of the minds" on essential terms such as

price and the scope of work to be performed.

A contract, however, is not invalidated merely because the parties start to

disagree about the interpretation of contract language. Cf. Cox Broad. Corp. v.

Nat'l Collegiate Athletic Ass'n, 297 S.E.2d 733, 737–38 (Ga. 1982)

(distinguishing a breach of contract case "from the many cases in which the

parties begin to disagree about the interpretation of contract language after the

contract has been executed"). Yet that is precisely what Scidera seeks to do

here. As described above, the Parties' conduct makes clear that an agreement

was reached for Meunier to perform legal services on behalf of Scidera. Although Scidera may–and, indeed, does–take issue with some of the fees that Meunier charged, that does not render the agreement invalid. See Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC v. Teledyne Techs., Inc., No. 1:12-CV-0686-JEC, 2013 WL 4806894, at *8–10 (N.D. Ga. Sept. 9, 2013) (rejecting various arguments by a defendant who sought to invalidate an agreement with his former counsel because those arguments were based on unsupported assertions that the former counsel's work was inadequate and flawed), aff'd, 606 F. App'x 567 (11th Cir. 2015).[8]

Furthermore, Scidera's arguments challenging the efficacy and efficiency of Meunier's work are legally deficient: "The law presumes that lawyers perform legal services in an ordinarily skillful manner. This presumption remains with the attorney until the presumption is rebutted by expert legal testimony; otherwise, the grant of a summary judgment in favor of the attorney

---

[8] The Court further notes that the Judge in this case found that an enforceable agreement existed between the law firm and its former client under starkly similar circumstances to those at hand, including the fact that an engagement letter setting out material terms of the representation was never signed by the former client. The Judge went on to grant summary judgment for the plaintiff law firm on, among other things, its breach of contract claim.

16

is proper." Schluter v. Perrie, Buker, Stagg & Jones, P.C., 498 S.E.2d 543, 545 (Ga. Ct. App. 1998) (internal quotations and citations omitted).[9] Here, Scidera has not provided any opinion from an expert in the legal field, and so the presumption that Meunier's work was performed in a reasonably skillful manner goes unrebutted.

Nevertheless, the Court acknowledges that expert testimony may not, in every instance, be required to create an issue of material fact as to attorney billing records. In *Schluter*, for example, the defendant testified that three meetings appearing in the invoices did not take place and, in fact, for two of them, he was out of town. Id. at 546. The defendant also testified that he was billed for time by someone whom he never authorized to work on the matter, and so summary judgment was improper as to those charges. Id. But unlike the defendant in *Schluter*, Scidera has not presented any evidence, whatsoever,

---

[9] Scidera attempts to distinguish *Schluter* by pointing out differences between the agreement at issue there and the one presently under debate. That, however, has no bearing on the applicability of the above legal presumption, which was not only relied on by the *Schluter* court in agreeing with the trial court's finding in favor of the attorney, but by other courts as well. See Schluter, 489 S.E.2d at 546 n.5 (citing Hughes v. Malone, 247 S.E.2d 107 (Ga. Ct. App. 1978); Findley v. Davis, 414 S.E.2d 317 (Ga. Ct. App. 1991), rev'd on other grounds, 422 S.E.2d 859 (Ga. 1992); and Rose v. Rollins, 306 S.E.2d 724 (Ga. Ct. App. 1983).

AO 72A
(Rev.8/82)

challenging the correctness of Meunier's invoices. Scidera, instead, attempts to cast doubt on the invoices by claiming that they lack sufficient detail and that a number of entries appear to be duplicative or inaccurate. These arguments, however, are not evidence. Scidera has not provided any testimony or documentation showing that the work in question was never performed or was accomplished in less time than Meunier billed. Scidera has also not alleged that Meunier's work was wholly without value or undeserving of payment. Nor could it given that Scidera clearly benefitted from Meunier's efforts, which not only contributed to the resolution of the Virginia case, but also helped Scidera obtain a substantial cash settlement.[10]

At the same time, the engagement letter is clear that Meunier would not bill Scidera for travel time. (Engagement Letter, Dkt. [65-8] at 5.) Yet, in at least one instance cited by Scidera, it appears that Meunier billed for someone's time to travel to and from Virginia. (See Def.'s Resp., Dkt. [75] at 7

---

[10] The role that Meunier played in the settlement negotiations, if any, is unclear from the record. (Compare Scidera Depo, Dkt. [33] at 54–56, and Def.'s Suppl. SOF, Dkt. [75-5] ¶ 7, with Aff. of Stephen M. Schaetzel ("Schaetzel Aff."), Dkt. [65-4] ¶ 14.) It is clear, however, that the settlement was favorable to Scidera, that Meunier represented Scidera in the Virginia case from inception to resolution, and that, while litigation was ongoing, Meunier performed a significant amount of work on Scidera's behalf.

n.1 (citing Ex. N, Pl.'s SOF, Dkt. [65-17] at 194–95).)  Because the contract

does not authorize Meunier to charge Scidera for travel time, Meunier is not

entitled to recover any such charges at summary judgment.

It is important to emphasize, however, that neither these unauthorized

entries nor Scidera's displeasure with some of the other work means, as Scidera

suggests, that a valid agreement does not exist.  There is no evidence that the

Parties ever agreed that acceptance of Meunier's work would be conditioned

upon Scidera's satisfaction with its cost and quality.  Indeed, although couched

as an argument on mutual assent, it seems that what Scidera is actually

attempting to say is that certain inadequacies and flaws in Meunier's work and

billing amount to a breach of contract.  Even so construed, the evidence falls

well short of this.

The undisputed evidence shows that, on one occasion, Scidera expressed

concern over the efficiency of Meunier's work in light of growing costs

approaching the initial estimate.  (Ex. J, Pl.'s SOF, Dkt. [65-13]; see also Ex.

G, Pl.'s SOF, Dkt. [65-10] at 2–3.)  Other than that, the record is devoid of any

complaints by Scidera as to the appropriateness of Meunier's fees during the

approximately four years that the two maintained a professional relationship. If

Scidera was unsatisfied with Meunier's work on the Virginia case it could have terminated the agreement or instructed Meunier to discontinue its work. Instead, Scidera acquiesced and continued to work with Meunier until the case was resolved.

Therefore, the Court finds that, based on the undisputed evidence, the Parties had a valid and enforceable contract for Meunier to provide legal services at the rates set forth in the engagement letter. Scidera has failed to show, through any competent evidence, that those services were unnecessary to the resolution of the Virginia case or that the hours expended by Meunier were unreasonable or the rates charged excessive. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Scidera is, thus, contractually obligated to pay Meunier's fees for that work, with the exception of time billed for travel, which was specifically excluded from the agreement. Having failed to present any justifiable reason for failing to pay the amount owed, Scidera's refusal to do so amounts to a breach of contract. Accordingly, Meunier's Motion for Summary Judgment is **GRANTED** as to its

AO 72A
(Rev.8/82)

breach of contract claim, except for any invoiced time for travel.

> 2.    *Open Account*

An action on open account provides a simplified procedure to recover money owed when the parties do not dispute the amount due or the goods or services received.  Am. Arbitration Ass'n v. Bowen, 743 S.E.2d 612, 614 (Ga. Ct. App. 2013).  Meunier argues it is entitled to summary judgment on its open account claim because Scidera, in filing its Answer, failed to comply with the technical pleading requirements set out in O.C.G.A. § 9-10-112.  That provision says, "Whenever an action is brought on an open account . . . , the answer" must either "deny that the defendant is indebted in any sum or []  specify the amount in which the defendant admits he may be indebted . . . ."  O.C.G.A. § 9-10-112.  Admittedly, Scidera's Answer does neither.  But, Scidera argues, it did not have to.  According to Scidera, O.C.G.A. § 9-10-112's heightened pleading requirements do not apply in this case because they directly conflict with Federal Rule of Civil Procedure 8(b).

"When a situation is covered by one of the Federal Rules, . . . the court has been instructed to apply the Federal Rule, and can refuse to do so only if" it is unconstitutional or found to modify, enlarge, or abridge any substantive

rights under the Rules Enabling Act. <u>Hanna v. Plumer</u>, 380 U.S. 460, 471 (1965). In this case, then, the Court must "determine whether [Rule 8] answers the question in dispute"–that is, whether Scidera properly denied Meunier's open account claim. <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 398 (2010). If Rule 8 does, it governs.[11]

Rule 8(b) provides, "[i]n responding to a pleading, a party shall: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1). The Rule further states that "denials" must "fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2).

Meunier admits that Rule 8 applies in this case but argues that O.C.G.A § 9-10-112 does too. The Court disagrees. As is clear from the language of Rule 8, there is no requirement that a defendant deny a claim on an open account in its entirety or else specify the amount of debt believed to be owed. Therefore, O.C.G.A § 9-10-112 demands more from a defendant in filing its answer than the standard contemplated by the Federal Rules. This Court and

---

[11] The Federal Rules of Civil Procedure are granted presumptive validity and have never been found to violate the second prong of the Supreme Court's test, either collectively or independently. <u>See Hanna</u>, 380 U.S. at 472–74.

22

others have held, on numerous occasions, that Georgia's heightened pleading

standards conflict with the Federal Rules and are, thus, inapplicable to diversity

cases.  See, e.g., Adventure Outdoors, Inc. v. Bloomberg, 519 F. Supp. 2d 1258

(N.D. Ga. 2007) (finding Georgia's anti-SLAPP statute's verification

requirement to be a heightened pleading requirement in direct conflict with

Federal Rule of Civil Procedure 8(a)), rev'd on other grounds, 552 F.3d 1290

(11th Cir. 2008); 1524948 Alberta Ltd. v. Lee, No. 1:10-CV-02735-RWS, 2011

WL 2899385 (N.D. Ga. July 15, 2011) (same); Stidham v. United States, No.

1:13-CV-1093-TWT, 2014 WL 25584 (N.D. Ga. Jan. 2, 2014) (finding Rule

8(a) inconsistent with O.C.G.A. § 9-11-9.1–Georgia's requirement that a party

asserting a claim for professional malpractice file an expert affidavit along with

the complaint–because it establishes a more stringent pleading requirement);

see also Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513 (2002) (instructing

that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with

limited exceptions," such as claims of fraud or mistake, which, according to

Rule 9(b), must be pled with greater particularity); Caster v. Hennessey, 781

F.2d 1569, 1570 (11th Cir. 1986) ("[U]nder *Hanna* a federal court need not

adhere to a state's strict pleading requirements but should instead follow Fed.

AO 72A
(Rev.8/82)

R. Civ. P. 8(a)").

Although each of these cases involved the standard for filing complaints under Rule 8(a), the Court sees no reason why the same result should not be reached when a state statute goes beyond Rule 8(b)'s responsive pleading requirements. Accordingly, the Court finds that O.C.G.A. § 9-10-112 is covered by–and conflicts with–Rule 8 of the Federal Rules of Civil Procedure. Because Meunier's Complaint complies with Rule 8(b), no more was required.

With that settled, the Court now turns to the merits of Meunier's open account claim, which hinges on whether there is a genuine dispute "that goes to either assent to the services, terms of the contract, what work was performed, the quality of the performance, or cost[.]" Altacare Corp. v. Decker, Hallman, Barber & Briggs, P.C., 730 S.E.2d 12, 14 (Ga. Ct. App. 2012). If no such dispute exists, Meunier is entitled to summary judgment; but if one does, "then suit on account is not the proper procedure . . . because there is a factual issue other than nonpayment on the account." Id.

As described above, the undisputed facts in the record demonstrate that the Parties had a valid, enforceable agreement for Meunier to provide legal services for Scidera. They also show, however, that the Parties agreed Meunier

24

would not bill Scidera for travel time but that on at least one occasion Meunier did so.  This raises a genuine dispute about the total amount owed and, as a result, "takes the case outside the simplified parameters of an action on open account." <u>Schluter</u>, 498 S.E.2d at 545.  Accordingly, the Court finds that Meunier is not entitled to summary judgment on its open account claim; the Motion is **DENIED** as to that claim.

### 3.    *Prejudgment Interest*

Having concluded that summary judgment is warranted on Meunier's breach of contract claim but not its open account claim, the Court must now assess whether Meunier is entitled to recover prejudgment interest on its unpaid fees.  The Court finds Meunier is not.

Under Georgia law, only "liquidated damages" automatically bear prejudgment interest.  O.C.G.A. § 7-4-15.[12]  "For damages to be liquidated, the

---

[12]  In addition to this legal rate of 7% per year on a breach of contract claim for liquidated damages, Georgia law also provides for prejudgment interest at a higher rate of 18% per year on an open account claim meeting certain conditions.  O.C.G.A. § 7-4-16.  Of course, since Meunier cannot recover on its open account claim, Meunier cannot obtain the 18% rate.  But even had Meunier prevailed on its open account claim, it would not be entitled to the higher rate because "a recovery of pre-judgment interest pursuant to O.C.G.A. § 7-4-16 requires a pre-trial invocation of the applicability of that provision," <u>Gold Kist Peanuts v. Alberson</u>, 342 S.E.2d 694, 697 (Ga. Ct. App. 1986), and here there is no evidence that Meunier made the

25

damages must be in a certain and fixed amount, 'a sum which cannot be changed by proof; it is so much or nothing.'" Kitchen Int'l, Inc. v. Evans Cabinet Corp., 714 S.E.2d 139, 143 (Ga. Ct. App. 2011) (quoting GMC Grp., Inc. v. Harsco Corp., 695 S.E.2d 702, 703 (Ga. Ct. App. 2010)). A claim for damages is unliquidated, then, "when there is a bona fide contention as to the amount owing." Int'l Indem. Co. v. Terrell, 344 S.E.2d 239, 241 (Ga. Ct. App. 1986).

Once again, the Parties agreed that Meunier would not bill Scidera for travel time, but Meunier did so anyway. Accordingly, Meunier's damages are uncertain and, thus, unliquidated. As a result, Meunier's Motion for Summary Judgment is **DENIED** on its claim for prejudgment interest.

---

necessary pre-trial demand. While Meunier's Verified Complaint makes a 10-day demand for the fees owed, it does so pursuant to O.C.G.A.§ 13-1-11–a provision concerning attorney's fees in contract disputes. (Compl., Dkt. [1] ¶ 30.) Under Georgia law, however, "the request must *specify the interest rate* sought." Carrier Corp. v. Rollins, Inc., 730 S.E.2d 103, 112 (Ga. Ct. App. 2012) (quoting Spears v. Allied Eng'g Assocs., Inc., 368 S.E.2d 818, 820 (Ga. Ct. App. 1988)). Hence Meunier was required to inform Scidera that it intended to charge interest at a rate of 1.5% per month (or 18% per year) on any invoices that remained unpaid after 30 days . Compare Elec. Works CMA, Inc. v. Baldwin Tech. Fabrics, LLC, 703 S.E.2d 124, 125 (2010) (where such notice was properly given), with Carrier Corp., 730 S.E.2d at 112 (where it was not). Because Meunier did not, it is not entitled to O.C.G.A. § 7-4-16's 18% prejudgment interest rate.

AO 72A
(Rev.8/82)

*4.    Indemnification*

Meunier further argues that Scidera must indemnify Meunier for costs associated with defending the lawsuit brought against it by DTI.  According to Meunier, it retained DTI on Scidera's behalf and solely for Scidera's benefit.  Meunier's theory is rooted in the legal authority an attorney has to bind its client, and the obligations of the client thereafter.

"An attorney of record is the client's agent in pursuing a cause of action and under Georgia law an act of an agent within the scope of his apparent authority binds the principal."  Hayes v. Nat'l Serv. Indus., 196 F.3d 1252, 1254 (11th Cir. 1999) (internal quotations and citations omitted).  The scope of an attorney's authority encompasses "all necessary and usual means for effectually executing it."  Wilen v. Murray, 663 S.E.2d 403, 405 (Ga. Ct. App. 2008) (citations omitted).  This includes, for instance, "settling a claim on behalf of a client" and "hiring an expert witness."  Id.  But an attorney's authority is not without limits: it "is determined by the terms of his contract of employment and the instructions given by the client."  Shepherd v. Carlton's Nice Cars, Inc., 256 S.E.2d 113, 115 (Ga. Ct. App. 1979).

Here, it is undisputed that Meunier was Scidera's attorney of record in

the litigation matters.  Hence, Meunier was Scidera's agent, and thus had

authority to bind Scidera.  According to Meunier, this "authority may be

considered plenary unless limited by [Scidera] and that limitation [was]

communicated to [DTI]."  (Pl.'s Reply, Dkt. [77] at 14 (quoting Lytle v. King's

Constr. Co., No. 1:14-CV-288-GGB, 2015 WL 12856450, at *4 (N.D. Ga. July

30, 2015)).  The Court disagrees.  Although Meunier accurately cites the law in

Georgia, this particular legal doctrine is inapplicable to the case at hand.  To

the Court's knowledge, that law has only been applied in lawsuits brought by

third-parties.  That is to say, the rule is that absent knowledge of express

restrictions on an attorney's authority, a third party may deal with the attorney

as if dealing with the client, and if the client fails to perform, the *third-party*

may sue him directly.  See, e.g., Lyte, 2015 WL 12856450; Brumbelow v. N.

Propane Gas Co., 308 S.E.2d 544 (Ga. 1983).  This case, by contrast, was

brought by an agent (Meunier) to recover for an action taken on behalf of its

principal (Scidera).  As a result, the requirement that any limitation on

Meunier's authority must have been communicated to DTI is inapplicable.

Instead, the decisive question is whether Scidera told *Meunier* that its authority

was limited in some way.

Concerning the retention of DTI, there is a genuine question as to whether that happened. Specifically, Scidera acknowledges that the court in the Virginia case ordered Scidera to produce a large amount of documents, which necessitated the hiring of a litigation services company. (Scidera Dep., Dkt. [33] at 57–58.) Scidera has also offered testimony that it told Meunier its budget was $20,000–in other words, that Meunier was only authorized to retain a litigation services company at a cost of $20,000 or less. (See id. at 59– 62, 64; Cybyk Decl., Dkt. [75-2] ¶ 10; Def.'s Resp. to Pl.'s SOF, Dkt. [76] ¶ 27). It is undisputed, however, that DTI demanded a price of $43,515; yet Meunier retained DTI anyway. (Ex. 10, Cybyk Dep., Dkt. [33-11].)

Thus, there is a question of fact as to whether Meunier was acting within its authority when it hired DTI. Accordingly, Meunier's Motion for Summary Judgment must be **DENIED** on the issue of indemnity. See Mori Lee, LLC v. Just Scott Designs, Inc., 754 S.E.2d 616, 620 (Ga. Ct. App. 2014) ("As a general rule, the question of authority to do an act, when it is to be determined from disputed facts or undisputed facts from which conflicting inferences may be drawn, must be decided by the jury as a question of fact or as a question of mixed fact and law." (quoting Atlanta Limousine Airport Servs., Inc. v. Rinker,

29

287 S.E.2d 395, 397 (Ga. Ct. App. 1981))).

>    5.    *Attorney's Fees and Costs*

In addition to its claims for unpaid legal fees and prejudgment interest,

Meunier also seeks to recover attorney's fees and costs under O.C.G.A. §§ 13-

1-11 and 13-6-11.  (Am. Compl., Dkt. [27] Count IV.)  Scidera argues it is

entitled to summary judgment on that claim, and originally, Meunier too.

However, Meunier has since withdrawn its claim for fees under § 13-1-11 and

taken the position that a jury, rather than the Court, should decide whether

Scidera's conduct warrants a fee award under § 13-6-11.

Under  O.C.G.A. § 13-6-11, a plaintiff may recover the expenses of

litigation "where the defendant has acted in bad faith, has been stubbornly

litigious, or has caused the plaintiff unnecessary trouble and expense . . . ."

"The existence of bad faith or stubborn litigiousness usually is a jury question,

and only in the rare case where there was absolutely no evidence to support the

award of expenses of litigation would the trial court be authorized to grant

summary adjudication on such issues."  Brito v. Gomez Law Grp., LLC, 658

S.E.2d 178, 182 (Ga. Ct. App. 2008) (internal quotations and citations

omitted).

AO 72A
(Rev.8/82)

### a.    Stubborn Litigiousness

An award of litigation expenses for being stubbornly litigious or for causing unnecessary trouble and expense is predicated on the absence of a bona fide controversy.  Read v. Benedict, 406 S.E.2d 488, 490 (Ga. Ct. App. 1991). If "the evidence shows the existence of a genuine factual dispute or legal dispute as to liability, the amount of damages, or any comparable issue, then attorney fees are not authorized."  Brito, 658 S.E.2d at 182 (quoting Wilkinson Homes, Inc. v. Stewart Title Guar. Co., 610 S.E.2d 187, 194 (Ga. Ct. App. 2005)).

In this case, there is a genuine dispute as to whether Meunier can recover on its indemnity claim.  Therefore, there is a bona fide controversy in this matter.  And although Scidera did not prevail on its defenses to Meunier's other claims, Scidera's legal arguments were not wholly without merit, nor is there evidence of Scidera's conduct causing unnecessary trouble and expense. Accordingly, Meunier is not entitled to attorney's fees on the grounds of stubborn litigiousness.  Scidera's Motion for Summary Judgment is **GRANTED** on this issue and Meunier's is **DENIED**.

AO 72A
(Rev.8/82)

### b.    Bad Faith

The "bad faith" permitting an award of attorney fees under O.C.G.A. § 13-6-11 must "relate[] to the defendant's conduct during the subject transaction prior to litigation, not to conduct in defending the litigation." <u>Id.</u> In a breach of contract action, conduct rises to the level of bad faith only if it was motivated by some "interested or sinister motive." <u>Lexmark Carpet Mills, Inc. v. Color Concepts, Inc.</u>, 583 S.E.2d 458, 461 (Ga. Ct. App. 2003). Bad faith does not exist where a breach of contract merely results from "an honest mistake as to one's rights or duties." <u>Id.</u> Finally, whether some conduct amounts to bad faith under O.C.G.A. § 13-6-11 is generally for the jury to decide. <u>Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC</u>, 703 S.E.2d 687, 691 (Ga. Ct. App. 2010).

Meunier argues that Scidera's avoidance of the legal fees sought is the "epitome of bad faith." (Resp. to Def.'s MSJ, Dkt. [73] at 3.) Generally speaking, under Georgia law, bad faith in a breach of contract requires something more "than mere refusal to pay a just debt . . . ." <u>Lexmark Carpet Mills, Inc.</u>, 583 S.E.2d at 461 (quoting <u>Jordan Bridge Co. v. I.S. Bailey, Jr., Inc.</u>, 296 S.E.2d 107, 109 (Ga. Ct. App. 1982)). But at the same time, it has

32

been held that denying someone compensation due under a contract and forcing him to sue to recover it can constitute bad faith sufficient to authorize an award of attorney's fees. <u>Tattersall Club Corp. v. White</u>, 501 S.E.2d 851, 855–56 (Ga. Ct. App. 1998) (finding bad faith where employer refused to pay employee compensation due under a contract, despite lack of any bona fide controversy as to whether employee was entitled to compensation, and despite fact that employer was admittedly satisfied with employee's performance).

Because it is undisputed that Meunier performed a significant amount of work in the litigation matters for which Scidera has refused to pay, the Court finds a genuine issue of material fact as to whether Scidera acted in bad faith. Both Motions for Summary Judgment are, therefore, **DENIED** on the issue of attorney's fees and costs for acting in bad faith.

### Conclusion

As described above, Meunier's Motion for Summary Judgment [65] is **GRANTED, in part** and **DENIED, in part**. It is granted as to its breach of contract claim (Count I), except for any invoiced time for travel. At a minimum, this means Meunier cannot recover, at this stage, for the two travel time entries cited by Scidera, which amount to $1,316.00. In addition, Scidera

33

has alluded to the existence of other such charges. The Court will, therefore, afford Scidera an opportunity to object to any other entries for travel time in the invoices.[13] Scidera is **ORDERED** to file any such objections within 14 days of the entry of this Order, and Meunier may file a response thereto within 14 days thereafter. Meunier's Motion for Summary Judgment is **DENIED** as to its open account claim (Count II), indemnity and contribution claim (Count III), and claim for attorney's fees and litigation costs (Count IV).

Scidera's Partial Motion for Summary Judgment [66] is also **GRANTED, in part** and **DENIED, in part**. Meunier's claim for attorney's fees and litigation costs (Count IV) is **DISMISSED** insofar as it is premised on stubborn litigiousness, but the claim may proceed on the issue of bad faith.

The Parties shall file a proposed consolidated pretrial order on any remaining claims within 30 days of the entry of this Order.

**SO ORDERED**, this 22nd day of June, 2018.

_____
**RICHARD W. STORY**
United States District Judge

---

[13] The Court emphasizes that such objections should only be made for travel *time–i.e.*, attorneys billing merely for the time it takes them to go from one place to another. This is distinct from travel *expenses*, such as airfare, lodging, and meals, which are specifically contemplated by the engagement letter.

AO 72A
(Rev.8/82)